IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CNSP, INC. D/B/A NMSURF,

    Plaintiff,

vs.                                                       Civ. No. 17-355 KG/SCY

CITY OF SANTA FE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion for Reconsideration on Order Denying Motion for Temporary Restraining Order and Preliminary Injunction (Motion for Reconsideration), filed April 13, 2017. (Doc. 18). Defendant City of Santa Fe (the City) filed a response on April 27, 2017, and Plaintiff filed a reply on May 9, 2017. (Docs. 25 and 33). Having reviewed and considered the Motion for Reconsideration and the accompanying briefs, the Court denies the Motion for Reconsideration.

*A. Background*

Under Chapter 27 of the City of Santa Fe's ordinances, any entity that "proposes to construct a telecommunications infrastructure in the city's public rights-of-way [PROW] shall submit an application…." City of Santa Fe Ord. (#2016-42, §7), § 27-2.4(A) (as amended Nov. 9, 2016). Once the City accepts an application to "construct a telecommunications infrastructure in the" PROW, the City's "director" reviews the application, and, if acceptable, negotiates the terms of a franchise. *Id.* at § 27-2.4(B). The City, through its city council, must then adopt the franchise by ordinance in order to grant the franchise. *Id.* at § 27.24(C). After the City grants a franchise, the entity must pay an infrastructure maintenance franchise fee at the rate of 2% of all

gross charges charged by the entity for "telecommunications originating or received in the city." City of Santa Fe Ord. (#2010-14, § 7), § 27-2.5 (as amended Nov. 9, 2016).

In January 2015, Plaintiff applied for PROW access under Chapter 27 "for purposes of creating an Intrastate Wireline Fiber to The Home/Business Telecommunications Network." (Doc. 1) at 3, ¶ 1. A few days later, the City accepted Plaintiff's application. *Id.* at 7, ¶ 21. The City, however, has not acted on Plaintiff's application. *Id.* at 8, ¶ 31. Plaintiff claims that this delay in acting on its application results in it "losing ninety thousand dollars ($90,000.00) per month in revenues for Phase One development and additional revenues from further phase developments totaling four million five hundred thousand dollars ($4,500,000)." *Id.* at 10, ¶ 44. Plaintiff further claims that it "has spent approximately $150,000.00 in equipment, engineering fees, and materials." *Id.* at 11, ¶ 45.

Although the City has not acted on Plaintiff's application for PROW access, Plaintiff maintains that the City "has granted Comcast, CenturyLink, and Cybermesa, all telecommunications companies, PROW access." *Id.* at ¶ 49. Plaintiff alleges also that Comcast and CenturyLink do not pay the 2% gross fee for internet access as required by Chapter 27. *Id.* at 12, ¶¶ 51 and 52. Plaintiff contends that Cybermesa does not pay any fees under Chapter 27 and that the City actually donated to Cybermesa a "one mile fiber line" through which Cybermesa sells internet service. *Id.* at ¶ 53. Plaintiff further contends that Cybermesa has a professional services agreement with the City for broadband infrastructure instead of a franchise. *Id.* at 13, ¶ 59.

Plaintiff sued the City on March 20, 2017. In the First Cause of Action, Plaintiff alleges that the City is violating the federal Telecommunications Act (TCA) by prohibiting Plaintiff access to the PROW. In the Second Cause of Action, Plaintiff alleges that the City is violating

the Fifth Amendment due process clause of the United States Constitution and Article II, Section 18 of the New Mexico Constitution by denying Plaintiff equal protection of the law.  Finally, in the Third Cause of Action, Plaintiff alleges the City violated Article IX, Section 14 of the New Mexico Constitution, the Anti-Donation Clause, by entering into a professional services agreement with Cybermesa and donating it a fiber optic line.

On March 21, 2017, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction (Motion for TRO and Preliminary Injunction).  (Doc. 3).  Plaintiff moved the Court to enjoin the City from enforcing Chapter 27 and from prohibiting Plaintiff from entering the PROW.  *Id.* at 14.  The Court held a hearing on the Motion for TRO and Preliminary Injunction on March 30, 2017, and denied the Motion.  (Docs. 8 and 9).  Plaintiff now moves the Court to reconsider its denial of the Motion for TRO and Preliminary Injunction or, in the alternative, to order the City to issue an expedited special use permit granting Plaintiff PROW access while the parties litigate this case.

B. Discussion

    *1. Plaintiff's Request to Reconsider the Denial of the Motion for TRO and Preliminary Injunction*

        *a. Standard of Review for a Motion for Reconsideration*

The Court construes Plaintiff's Motion for Reconsideration as "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n. 1 (10th Cir.1991).  The Tenth Circuit analyzes motions to reconsider interlocutory orders, like this one,

under Fed. R. Civ. P. 54(b)[1] and looks to Rule 59(e) for guidance in addressing those motions to reconsider. *Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (stating that, in considering Rule 54(b) motion to reconsider, "court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e).").

A Rule 59(e) movant carries the burden of demonstrating that the Court should alter or amend a judgment. *See, e.g., Winchester v. Wilkinson*, 2015 WL 2412175, at *2 (E.D. Okla.) ("court finds petitioner has failed to meet his burden for relief under Fed.R.Civ.P. 59(e)."). Rule 59(e) relief is appropriate if there is new controlling law, new evidence not available previously, or a "need to correct clear error or prevent manifest injustice." *Ankeney*, 524 Fed. Appx. at 458 (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). The Tenth Circuit has defined clear error as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001). Although the Tenth Circuit has not precisely defined "manifest injustice" within the meaning of Rule 59(e), that term is commonly defined as "[a] direct, obvious, and observable error in a trial court ...." *Black's Law Dictionary* (10th ed. 2014). Furthermore, Rule 59(e) does not allow a losing party to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012.

The Court notes that Plaintiff does not apply the above standard in its Motion for Reconsideration and, in fact, simply argues that the Court should have granted the Motion for TRO and Preliminary Injunction. Furthermore, Plaintiff does not present new controlling law or new evidence not available previously. Plaintiff merely revisits issues already addressed by the

---

[1] Rule 54(b) states: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

4

Court or attempts to advance arguments that could have been raised beforehand. Nonetheless, the Court will address Plaintiff's arguments assuming Plaintiff asserts that the Court's decision to deny the Motion for TRO and Preliminary Injunctions contains some kind of clear error or would cause manifest injustice.

*b. TRO and Preliminary Injunction Standards and Requirements*

To obtain a TRO or preliminary injunction, the moving party has the burden of demonstrating, "by a clear showing,": "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009); *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) (*en banc*). However, a movant has a heightened burden if a preliminary injunction falls within one of these three disfavored categories: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 975. "[C]ourts in this Circuit must recognize that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* Plaintiff requests that the Court reconsider its application of a heightened standard, its irreparable harm determination, and its public interest analysis. (Doc. 33) at 1.

5

*(1) Application of a Heightened Standard*

First, Plaintiff asserts that the Court should not have applied a heightened standard because the requested injunctive relief would not alter the status quo. "The status quo is not defined by the parties existing *legal rights;* it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal,* 389 F.3d at 975. In other words, one looks at the status quo "in fact" including "[t]he 'last peaceable uncontested status existing between the parties before the dispute developed,'" which "is most surely the open and notorious actions of the parties before the dispute." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 981 (citation omitted).

For the last two years, the reality, or open and notorious actions of the City and Plaintiff, has been that the City has not acted on Plaintiff's franchise application and Plaintiff has not accessed the PROW. Should the Court grant the Motion for TRO and Preliminary Injunction, the City would be enjoined from enforcing Chapter 27 and from prohibiting Plaintiff from entering the PROW. (Doc. 3) at 14. Such a TRO and preliminary injunction would allow Plaintiff entry into the PROW, which is not the present situation. A TRO and preliminary injunction, therefore, would clearly alter the status quo, thereby, making the TRO and preliminary injunction a disfavored injunction requiring a heightened standard. Consequently, it was not clearly erroneous or a manifestly unjust for the Court to apply a heightened standard in determining the Motion for TRO and Preliminary Injunction.

The Court notes that "Plaintiff requests this Court issue a statement defining the relative position of the City during the status quo," if the Court decides that the status quo includes that "the City has not granted the franchise that would give Plaintiff PROW access." (Doc. 33) at 3-4 (quoting (Doc. 25 at 5)). The Court, however, does not base its status quo decision on whether the failure to grant a franchise kept Plaintiff from accessing the PROW. The Court simply observes and finds that Plaintiff was not in the PROW during the status quo period. Whether the City has a legal right to refrain from acting on the franchise application and, thereby, keep Plaintiff from accessing the PROW does not define the status quo. The Court, therefore, denies Plaintiff's request for "a statement defining the relative position of the City during the status quo…." *Id.* at 4.

*(2) Likelihood of Success on the Merits and Balance of Equities*

Before reaching the issue of whether, under a heightened standard, the Court's determinations on irreparable harm and public interest were clearly erroneous or manifestly unjust, the Court finds it more expeditious to examine first issues related to Plaintiff's likelihood of success on the merits as well as the balance of equities. Typically, a court uses a modified test to analyze the likelihood of success on the merits. *RoDa Drilling Co.*, 552 F.3d at 1208 n.3 ("Under the modified test, a movant need only show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.'" (citation omitted)). However, when a disfavored injunction is sought, as in this case, "the modified likelihood-of-success-on-the-merits test, is not appropriate—a movant must demonstrate a substantial likelihood of success on the merits, in addition to the other elements." *Id.*

7

Oddly, Plaintiff states that the "Court has already indicated a likelihood of success on the merits at the March 21, 2017 hearing." (Doc. 33) at 9. The Court, in fact, found to the contrary at the hearing: "I don't have enough to believe that there is a substantial likelihood to prevail on the merits." Transcript at 48.[2] *See also id.* ("I do not have in front of me in writing or what I have heard so far in argument enough reason to believe that the plaintiffs [sic] could prevail on the merits."). Plaintiff does not provide any argument or reason for the Court to now determine that its decision on likelihood of success on the merits was clearly erroneous or manifestly unjust. The Court further notes that Plaintiff simply refers to the Motion for TRO and Preliminary Injunction to show that a balance of the equities supports a TRO or preliminary injunction. Considering the heightened standard and Plaintiff's failure to demonstrate how the Court committed clear error or caused manifest injustice with respect to the likelihood of success on the merits and the balance of equities elements required for issuance of a TRO or preliminary injunction, the Court denies Plaintiff's request to reconsider its denial of the Motion for TRO and Preliminary Injunction.

*2. Plaintiff's Alternative Request for an Expedited Special Use Permit.*

Plaintiff also asks, in the alternative to reconsideration, that the Court order the City to issue a special use permit on an expedited basis to allow Plaintiff access to the PROW while this matter is litigated. This request is essentially a request for a mandatory preliminary injunction, a disfavored preliminary injunction, because it requires the City to affirmatively act, i.e., issue a special use permit. *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 979 (observing that mandatory preliminary injunctions "affirmatively require the nonmovant to act in

---

[2] The Court's citation to the hearing transcript refers to the court reporter's original unedited version. Any final transcript may contain slightly different page number.

a particular way…." (citation omitted)). A heightened standard, therefore, applies to this alternative request for preliminary injunctive relief.

Plaintiff asserts that preliminary injunctions ordering the issuance of telecommunications permits are appropriate under the TCA because TCA claims require expedited review in order to promote the TCA's goal of a competitive and de-monopolized telecommunications market. Plaintiff relies on *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490 (2d Cir. 1999); *AT & T Communications of the Southwest, Inc. v. City of Dallas*, 8 F. Supp. 2d 582 (N.D. Tex. 1998). Indeed, Congress intended the TCA

> to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services ... by opening all telecommunications markets to competition....

*Town of Oyster Bay*, 166 F.3d at 493 (quoting H.R. Conf. Rep. No. 104–458, at 206 (1996), reprinted in 1996 U.S.C.C.A.N. 124, 124). Moreover, the TCA requires that courts hear and decide TCA claims "on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). Even so, the Court cannot order preliminary injunctive relief without making a determination under a preliminary injunction analysis.

*Town of Oyster Bay* concerned a plaintiff's motion for summary judgment, not a motion for preliminary injunction or TRO. The district court, in that case, granted the motion for summary judgment "holding that the Town had violated the TCA and ordering the Town to issue all necessary permits and licenses to [the plaintiff] so that it could construct the two cell sites." *Town of Oyster Bay*, 166 F.3d at 492. The Second Circuit subsequently affirmed the district court's determination that the Town violated the TCA. *Id.* at 497. The Second Circuit then addressed the issue of an appropriate remedy. The Second Circuit first noted that "[t]he TCA does not specify a remedy for violations of the cellular siting subsection." *Id.* The Second

Circuit further observed that "the majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits." *Id.* The Second Circuit then concluded that "[g]iven the weight of authority that injunctive relief best serves the TCA's stated goal of expediting resolution of this type of action" and given that a remand of "the permit applications back to the Town for compliance with remaining local procedure" would not serve a "useful purpose in this case," an injunction requiring "the Town to issue the permits was an appropriate remedy." *Id.*

While *Town of Oyster Bay* clearly holds that injunctive relief may be appropriate when a court determines that a local government violated the TCA, it does not address the situation here in which a plaintiff seeks a TRO or preliminary injunction prior to a ruling on the merits of a TCA claim. The Second Circuit, thus, did not consider the issues before this Court such as whether to apply a heightened preliminary injunction standard and whether a plaintiff in a similar situation would meet the preliminary injunction requirements under that standard. Moreover, the Second Circuit's determination that remanding the matter back to the Town would not serve a useful purpose is simply not applicable to this case where the Court has yet to decide if (1) the City violated the TCA, and (2) a remand to the City requiring expeditious processing of the franchise application would not serve a useful purpose. *Cf. PrimeCo Pers. Commc'ns, L.P. v. Vill. of Fox Lake*, 26 F. Supp. 2d 1052, 1066 (N.D. Ill. 1998) (after finding TCA violation, court denied request for injunctive relief and, instead, ordered Village to rule on telecommunications application within 60 days); *AT & T Wireless Servs. of Florida, Inc. v. Orange Cty.*, 982 F. Supp. 856, 862 (M.D. Fla. 1997) (after finding TCA violation, court found injunction inappropriate, remanded case to Board to provide written decision on telecommunications application in 35 days, and observed that "[g]iven the traditional judicial deference accorded to local land use

10

regulations, the Court is loathe to trespass on that authority, at this time"); *but see, e.g., Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 20 F. Supp. 2d 875, 881 (E.D. Pa. 1998), *aff'd,* 181 F.3d 403 (3d Cir. 1999) (after finding TCA violation, court granted injunctive relief and noted remand to township "would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis" when "Board and protestants already had a full opportunity to present and hear evidence" on application); *Illinois RSA No. 3, Inc. v. Cty. of Peoria*, 963 F. Supp. 732, 747 (C.D. Ill. 1997) (after finding TCA violation, court granted injunctive relief and determined it "would be a waste of time and would frustrate the Telecom Act's direction to expedite these proceedings" to remand to County Board). The Court finds that *Town of Oyster Bay* does not support Plaintiff's alternative request for preliminary injunctive relief.

Plaintiff specifically cites *City of Dallas*, a case where a district court granted a motion for preliminary injunction in a TCA case, for its holding that a preliminary "injunction will promote the goals articulated by Congress when it enacted the FTA and Section 253 in particular, namely competition and de-monopolization of local telephone markets." *City of Dallas*, 8 F. Supp. 2d at 595. The court in *City of Dallas* made this holding in finding that the public interest would not be harmed if it grants the motion for preliminary injunction. *Id.* In granting the motion for preliminary injunction, the court also determined that the plaintiff demonstrated a substantial likelihood of succeeding on the TCA claims, irreparable injury, and that the balance of potential harms or equities favors an injunction. *Id.* at 590-95.

Although *City of Dallas* stands for the proposition that the public interest element of the preliminary injunction analysis is met in a TCA case, unlike the plaintiff in *City of Dallas*, Plaintiff, here, has not addressed, let alone argued, whether it has a substantial likelihood of

11

success on the TCA claim or whether the balance of potential harms or equities favors its alternative request for preliminary injunctive relief. Instead, Plaintiff argues in a conclusory manner that "a preliminary injunction is appropriate under the TCA to promote the TCA's intent for review on an expedited basis." (Doc. 33) at 8. *City of Dallas*, therefore, does not support Plaintiff's alternative argument for a preliminary injunction.

In sum, Plaintiff has not clearly shown that it has met all of the requirements necessary for this Court to order the City to issue an expedited special use permit while the parties litigate this lawsuit.

IT IS ORDERED that Plaintiff's Motion for Reconsideration on Order Denying Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 18) is denied.

_____
UNITED STATES DISTRICT JUDGE