IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CNSP, INC. D/B/A NMSURF,

    Plaintiff,

vs.                                                                Civ. No. 17-355 KG/SCY

CITY OF SANTA FE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant City of Santa Fe's Motion to Dismiss for Failure to State a Claim (Motion to Dismiss), filed April 11, 2017, which seeks to dismiss Plaintiff's federal claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 14). Plaintiff filed a response on April 25, 2017, opposing the Motion to Dismiss and, in the alternative, seeking leave to amend its Complaint for Declaratory Judgment, Injunctive and Other Relief (Complaint) (Doc. 1) should the Court decide to grant the Motion to Dismiss. (Doc. 23). Defendant City of Santa Fe (City) filed a reply on May 5, 2017. (Doc. 29). Having considered the Motion to Dismiss and the accompanying briefing, the Court grants the Motion to Dismiss, denies Plaintiff's request to amend the Complaint, and declines to exercise supplemental jurisdiction over the state claims. Consequently, the Court will dismiss this suit in its entirety.

*A. Background*

Under Chapter 27 of the City's ordinances, any entity that "proposes to construct a telecommunications infrastructure in the city's public rights-of-way [PROW] shall submit an

application…." City of Santa Fe Ord. (#2016-42, §7), § 27-2.4(A) (as amended Nov. 9, 2016).[1]
Once the City accepts an application to "construct a telecommunications infrastructure in the" PROW, the City's "director" reviews the application, and, if the application is acceptable, negotiates the terms of a franchise. *Id.* at § 27-2.4(B). The City, through its city council, must then adopt the franchise by ordinance in order to grant the franchise. *Id.* at § 27.24(C). After the City grants a franchise, the franchisee must pay an infrastructure maintenance franchise fee of 2% of all gross charges sought by the franchisee for "telecommunications originating or received in the city." City of Santa Fe Ord. (#2010-14, § 7), § 27-2.5 (as amended Nov. 9, 2016).

Plaintiff contends in the Complaint that, since the Court's 2013 ruling in *Quest v. City of Santa Fe* invalidating a previous 3% gross fee for telecommunications services, "[t]he City has not processed PROW agreements for multiple telecommunications providers … thereby prohibiting PROW access to providers." (Doc. 1) at 6-7, ¶¶ 15, 16, and 26. Plaintiff alleges that the City, nonetheless, entered into a professional services contract with CyberMesa, a telecommunications company, in March 2014 to create "a one mile fiber line to allegedly lower the costs of other Internet Providers in the City; however, no other providers have access to this line due to cost and proximity." *Id.* at 4, ¶ 1. Plaintiff asserts that the City actually donated to Cybermesa the "one mile fiber line." *Id.* at 12, ¶ 53. Plaintiff further alleges that under this

---

[1] The Court may consider documents outside of a complaint on a motion to dismiss in certain instances. For example, a court may consider: "(1) documents that the complaint incorporates by reference, (2) 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and (3) 'matters of which a court may take judicial notice.'" *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The Court considers Chapter 27 here because Plaintiff refers to it in the Complaint, it is central to the case, and the Court can take notice of a city ordinance. *See Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1504 (10th Cir. 1997) (noting that under Fed. R. Evid. 201 court can take judicial notice of municipal ordinance).

agreement the City granted CyberMesa PROW access, compensated CyberMesa monetarily, and granted CyberMesa the right to revenue from its telecommunications services. *Id.* at 6-7, ¶¶ 18 and 19; at 11, ¶ 49. Also, Plaintiff contends that Cybermesa does not pay any fees under Chapter 27. *Id.* at ¶ 53. Aside from these allegations, Plaintiff notes in its response that both it and CyberMesa are Competitive Local Exchange Carriers (CLECs). (Doc. 23) at 16.

In January 2015, Plaintiff applied for PROW access under Chapter 27 "for purposes of creating an Intrastate Wireline Fiber to The Home/Business Telecommunications Network." (Doc. 1) at 3, ¶ 1. A few days later, the City accepted Plaintiff's application. *Id.* at 7, ¶ 21. The City, however, has not acted on Plaintiff's application. *Id.* at 8, ¶ 31. Plaintiff claims that this delay in acting on its application results in it "losing ninety thousand dollars ($90,000.00) per month in revenues for Phase One development and additional revenues from further phase developments totaling four million five hundred thousand dollars ($4,500,000)." *Id.* at 10, ¶ 44. Plaintiff further claims that it "has spent approximately $150,000.00 in equipment, engineering fees, and materials." *Id.* at 11, ¶ 45.

Although the City has not acted on Plaintiff's application for PROW access, Plaintiff maintains that, in addition to CyberMesa, the City granted Comcast and CenturyLink, both telecommunications companies, PROW access. *Id.* at ¶ 49. Plaintiff alleges also that Comcast and CenturyLink do not pay the 2% gross fee for internet access as required by Chapter 27. *Id.* at 12, ¶¶ 51 and 52.

Plaintiff sued the City on March 20, 2017. In the First Cause of Action, Plaintiff alleges that the City is violating the federal Telecommunications Act (TCA) by prohibiting Plaintiff access to the PROW. Plaintiff specifically cites 47 U.S.C. Sections 253(a) and (c) of the TCA to support the First Cause of Action. In the Second Cause of Action, Plaintiff alleges that the City

is violating the Fifth Amendment due process clause of the United States Constitution and Article II, Section 18 of the New Mexico Constitution by denying Plaintiff equal protection of the law. Plaintiff contends that the City's actions violate Plaintiff's equal protection rights by (1) granting PROW access to telecommunications companies, but not acting on Plaintiff's franchise application, and (2) seeking to collect the 2% gross fee charge from new franchisees with PROW access, but not collecting this fee from other telecommunications providers who have PROW access. Finally, in the Third Cause of Action, Plaintiff alleges the City violated Article IX, Section 14 of the New Mexico Constitution, the Anti-Donation Clause, by entering into a professional services agreement with Cybermesa and donating it a fiber optic line.

Relevant to this Motion to Dismiss, Plaintiff seeks money damages as well as a declaration that "Chapter 27 of the City of Santa Fe Code or the violating sections are pre-empted, invalid, and are contrary to the Constitution," the TCA, "and laws of the United States…." (Doc. 1) at 13, ¶ 65(a). Plaintiff further asks the Court to enjoin the City "from implementing or enforcing Chapter 27 or the violating sections" and to order the City to pay daily fines for continuing to violate the TCA. *Id.* at 14, ¶ 65(b) and (h). Finally, Plaintiff seeks an order requiring "the City to institute policies, practices, and procedures to ensure compliance with PROW applications, including but not limited to implementing appropriate policies and training to all employees and officials regarding PROW under the Telecommunications Act." *Id.* at ¶ 65(i).

The City now moves under Rule 12(b)(6) to dismiss (1) the TCA claims because a private right of action for money damages is unavailable for those claims, (2) the request to declare that the TCA preempts Chapter 27, and (3) the Fifth Amendment equal protection claims.

Plaintiff opposes the Motion to Dismiss in its entirety, but "requests leave to amend" if the Court determines to grant the Motion to Dismiss. (Doc. 23) at 16.

*B. Standard of Review*

Although the City brings this Motion to Dismiss under Rule 12(b)(6), the Court considers the Motion to Dismiss as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See* Memorandum Opinion and Order (Doc. 51) at 4 (determining that Court will consider Motion to Dismiss under Rule 12(c) instead of Rule 12(b)(6)). Whether the Court analyzes the Motion to Dismiss under Rule 12(b)(6) or (c), courts "use the same standard when evaluating 12(b)(6) and 12(c) motions." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 n. 2 (10th Cir. 2002). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

*C. Discussion*

   *1. Whether Plaintiff has Stated a Plausible TCA Private Cause of Action for Money Damages and TCA Claim for Declaration of Preemption*

Plaintiff cites two provisions of the TCA to support its claims for monetary relief under the TCA. First, Plaintiff cites 47 U.S.C. Section 253(a), which states: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

Second, Plaintiff cites Section 253(c), a safe harbor provision, which states:

> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

*See Qwest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1271-72 (10th Cir. 2004) (characterizing Section 253(c) as safe harbor provision). Relevant to these two provisions is Section 253(d), the remedy provision for Section 253, which states:

> If, after notice and an opportunity for public comment, the [Federal Communications] Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

The City argues that Section 253, as a whole, does not provide a private right of action for money damages. Because Plaintiff specifically refers to Section 253(a) and (c) in the Complaint, the Court finds it necessary to examine whether each Section may provide a private right of action for money damages. Moreover, the City argues that Plaintiff has not pled factual allegations, even when viewed in the light most favorable to Plaintiff, sufficient to support its

6

request for a declaration that the TCA preempts Chapter 27. To address this argument, the Court looks to Section 253(d), which provides for preemption as a remedy.

*a. Section 253(a): Private Cause of Action for Money Damages*

Section 253 does not specifically provide for a private right of action for money damages, so one way to create such a right of action is through 42 U.S.C. Section 1983, which "authorizes claims against state actors to enforce rights created by federal statutes." *Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1118 (8th Cir. 2015). The Tenth Circuit, however, has held that Section 1983 does not create a private cause of action for a Section 253 claim. *Qwest Corp.*, 380 F.3d at 1265–67 (deciding that "district court was correct to conclude that Quest had no viable claim under 42 U.S.C. § 1983" for Section 253 claim.). In coming to that decision, the Tenth Circuit cited *Gonzaga Univ. v. Doe,* 536 U.S. 273, 280 (2002), in which the United States Supreme Court stated that "to create a federal right Congress must clearly manifest its intent to do so." *Quest Corp.*, 380 F.3d at 1265. After reviewing the statutory language of the TCA, including Section 253(d), as well as its legislative history, the Tenth Circuit concluded that there is "no clear manifestation of congressional intent to create a federal right through § 253." *Id.* at 1266.

Other courts have come to the same conclusion. *See, e.g., Spectra Commc'ns Grp., LLC*, 806 F.3d at 1120 ("We therefore conclude that § 253 does not authorize a private right of action for damages under § 1983 and that the district court did not err in dismissing Spectra's § 1983 claim."); *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 261 (5th Cir. 2008) ("the more persuasive reasoning is found in the Second, Ninth, and Tenth Circuits' holding, post-*Gonzaga,* that FTA § 253(a) does *not* create a private right enforceable under § 1983."); *NextG Networks of NY, Inc. v. City of New York,* 513 F.3d 49, 52–54 (2d Cir. 2008) (agreeing with Ninth and Tenth

7

Circuits that "§ 253 does not create a private right of action for damages" that may be enforced through § 1983).

Plaintiff argues that the Tenth Circuit in *Quest Corp.* erred in applying *Gonzaga* because that case applied only to Spending Clause legislation involving third-party beneficiaries. Admittedly, the Tenth Circuit noted in footnote 2 that it "assume[d], without deciding, that *Gonzaga*, provides the correct test." *Quest Corp.*, 380 F.3d at 1265 n. 2. The Seventh Circuit subsequently observed that

> [a]ny possibility that *Gonzaga* is limited to statutes that rest on the spending power (as the law in *Gonzaga* did) has been dispelled by *Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 125 S.Ct. 1453, 1458, 161 L.Ed.2d 316 (2005), which treats *Gonzaga* as establishing the effect of § 1983 itself.

*McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005). In fact, the United States Supreme Court, in *City of Rancho Palo Verdes*, applied *Gonzaga* to the TCA. *City of Rancho Palo Verdes*, 544 U.S. at 119. In hindsight, then, the Tenth Circuit correctly applied *Gonzaga* to Section 253.

Another way to create a private right of action when a statute does not explicitly provide for such an action is through an implied private cause of action. The United States Supreme Court recently explained that

> the Court clarified in a series of cases that, when deciding whether to recognize an implied cause of action, the "determinative" question is one of statutory intent. *Sandoval,* 532 U.S. at 286, 121 S.Ct. 1511. If the statute itself does not "displa[y] an intent" to create "a private remedy," then "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.*, at 286–287, 121 S.Ct. 1511; see also *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 23–24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Karahalios v. Federal Employees,* 489 U.S. 527, 536–537, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989). The Court held that the judicial task was instead "limited solely to determining whether Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). If the statute

> does not itself so provide, a private cause of action will not be created through judicial mandate. See *Transamerica, supra,* at 24, 100 S.Ct. 242.

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017). In fact, "[a] court's role in discerning whether personal rights exist in the § 1983 context should … not differ from its role in discerning whether personal rights exist in the implied right of action context." *Gonzaga Univ.*, 536 U.S. at 285. "Both inquiries simply require a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Id.*

The Sixth Circuit just this year commented that the majority of circuits "have concluded that § 253(a) does not grant a private right of action nor can a § 253(a) violation be brought as a § 1983 claim." *Superior Commc'ns v. City of Riverview, Michigan*, 2018 WL 651382, at *7–8 (6th Cir.). The Sixth Circuit followed the majority of circuits, including the Tenth Circuit in *Quest Corp. v. City of Santa Fe*, and held that "there is no private cause of action available under § 253(a)." *Id.* at *8. Furthermore, as stated above, the Tenth Circuit found in *Quest Corp. v. City of Santa Fe* that there was "no clear manifestation of congressional intent to create a federal right through § 253." 380 F.3d at 1266. Without that congressional intent, this Court cannot hold that Section 253(a) creates an implied private cause of action. Because Plaintiff cannot, as a matter of law, bring a claim for money damages under Section 253(a) based on Section 1983 or on an implied private cause of action, that claim is subject to dismissal with prejudice under Rule 12(c).

### b. Section 253(c): Private Cause of Action for Money Damages

To the extent Plaintiff is bringing a claim under Section 253(c), the Court notes that Section 253(c), as a safe harbor provision, serves "as a defense to federal preemption" of local ordinances that violate Section 253(a). *The Wilderness Soc'y v. Kane Cty., Utah*, 581 F.3d 1198, 1221 (10th Cir. 2009), *on reh'g en banc sub nom. The Wilderness Soc. v. Kane Cty., Utah*, 632

9

F.3d 1162 (10th Cir. 2011) (citing *Quest Corp.*, 380 F.3d at 1272 n.10). As such, Section 253(c) does not create a cause of action. *See Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 401 n. 7 (7th Cir. 2014) ("An affirmative defense is not a 'cause of action.'"). Hence, any purported claim under Section 253(c) for money damages is subject, as a matter of law, to a Rule 12(c) dismissal with prejudice.

    *c. Section 253(d): Declaratory Judgment*

Because Plaintiff cannot bring a private cause of action for money damages under either Sections 253(a) or (c), Plaintiff's recourse under the TCA is to petition the Federal Communications Commission (FCC) under Section 253(d) for preemption. As the Tenth Circuit observed, "Several courts have noted that 47 U.S.C. § 253(d) calls on the Federal Communications Commission ("FCC") to enforce 253(a) …." *Qwest Corp.* 380 F.3d at 1265. Section 253(d) specifically gives the FCC, not the Court, the power to "preempt the enforcement of" any ordinance in violation of Section 253(a) "to the extent necessary to correct such violation or inconsistency." Thus, the Court has no authority to declare that the TCA preempts Chapter 27. *Cf. Pleading Cycle Established for Comments on Petition of Abilene, Texas for Expedited Declaratory Ruling*, 11 F.C.C. Rcd. 10633 (1996) (city filed petition with FCC under Section 253(d) to declare section of Texas Public Utility Regulatory Act of 1995 violates Sections 253(a) and (b) of TCA "and is therefore preempted."). Because Plaintiff can bring its preemption claim before the FCC, its request in this Court for a declaration that the TCA preempts Chapter 27 or any violating sections is subject to dismissal without prejudice. In sum, the Court will dismiss all of Plaintiff's TCA claims for failure to state plausible claims for which this Court can grant relief.

### 2. *Whether Plaintiff has Stated Plausible Fifth Amendment Claims*

Plaintiff's Fifth Amendment claims also suffer from several problems. First, Plaintiff cannot have a direct cause of action under the United States Constitution. *See, e.g., Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (finding plaintiff did not have direct Constitutional claim). "[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Id.* Plaintiff does not allege that it is bringing the Fifth Amendment claims under Section 1983.

Second, the Fifth Amendment's equal protection guarantee applies only to federal legislation. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n. 1 (2017) (holding that since case involves federal legislation "applicable equality guarantee … is the guarantee implicit in the Fifth Amendment's Due Process Clause."). Because Plaintiff's equal protection claims involve application of the City's ordinances, not any federal legislation, the appropriate equal protection guarantee is found in the Fourteenth Amendment. *Id.* (holding that if case involves state legislation then applicable equality guarantee is "Fourteenth Amendment's explicit Equal Protection Clause…."). Plaintiff, however, does not allege that it is bringing a Fourteenth Amendment equal protection claim.

Third, assuming arguendo that Plaintiff brings the equal protection claims under the Fourteenth Amendment, it nonetheless has failed to state plausible Fourteenth Amendment claims. Plaintiff makes two equal protection claims: (1) Plaintiff alleges a class of one equal protection claim based on the City's failure to act on Plaintiff's franchise application while granting PROW access to other telecommunication companies; and (2) Plaintiff alleges that new franchisees must pay the 2% gross fee charge while other telecommunication companies with PROW access do not.

With respect to the class of one equal protection claim, the Tenth Circuit explains that

> [i]n the paradigmatic class-of-one case, a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive.

*Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1209 (10th Cir. 2006). The burden of demonstrating similarity is exacting in class of one lawsuits such that a plaintiff must "provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Id.* at 1213 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004)). Courts must also ask whether the official's action was "objectively reasonable." *Id.* at 1211.

As to the class based equal protection claim arising from the 2% gross fee charge for new franchisees, the Court notes that "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 547 (1983). Even so, to state a class based equal protection claim, "a plaintiff must show that he or she is a member of a class of individuals" who are "treated differently from similarly situated individuals who are not in that class." *Arabelo v. City of Denver*, 625 Fed. Appx. 851, 867 (10th Cir. 2015) (citing *SECSYS, LLC v. Vigil,* 666 F.3d 678, 688 (10th Cir. 2012)). Similar to a class of one equal protection claim, "similarly situated" means alike in "all relevant respects." *Riddle v. Hickenlooper*, 742 F.3d 922, 926 (10th Cir. 2014) (citation omitted).

Although Plaintiff alleges in its equal protections claims that the City granted PROW access to other entities, including CyberMesa, Comcast, and CenturyLink, and that CenturyLink, Comcast, and CyberMesa do not pay the full 2% gross fee charge despite having PROW access, Plaintiff only argues in its response that it and CyberMesa are similarly situated. Even accepting that both Plaintiff and CyberMesa are purportedly CLECs, unlike Plaintiff, CyberMesa did not

12

apply for a franchise but, instead, entered into a professional services agreement. CyberMesa's lack of a franchise application is a material distinction considering that Plaintiff's class of one equal protection claim stems from the City's alleged failure to act on Plaintiff's franchise application. To show material similarity for a class of one equal protection claim, Plaintiff would have to allege that both it and CyberMesa applied for franchises and that the City timely granted CyberMesa a franchise with PROW access while the City did not timely act on Plaintiff's application for a franchise and PROW access. This is not the alleged case.

Moreover, Plaintiff's lack of PROW access is a distinction relevant to Plaintiff's second equal protection claim, which arises from the 2% gross fee charge that applies to new franchisees with PROW access. To demonstrate a similarity in all relevant respects for a class based equal protection claim, Plaintiff would have to allege that it belongs to a class consisting of franchisees with PROW access which are required to pay the 2% gross fee charge while CyberMesa, also a franchisee with PROW access, does not have to pay the 2% gross fee charge. Again, this is not the alleged situation here. Viewing all of the above allegations in the light most favorable to Plaintiff, they do not demonstrate the material similarity, or similarity in all relevant respects, necessary for either a class of one equal protection claim or a class based equal protection claim.

Furthermore, with respect to the class of one equal protection claim, contracting with CyberMesa to create "a one mile fiber line to allegedly lower the costs of other Internet Providers in the City" is not necessarily objectively unreasonable even if the effect was allegedly that "no other providers have access to this line due to cost and proximity." (Doc. 1) at 4, ¶ 1. Plaintiff must allege sufficient facts to show that the City had a "wholly illegitimate motive" in ostensibly favoring CyberMesa over Plaintiff by giving CyberMesa PROW access and not acting on Plaintiff's franchise application. Plaintiff has not done so.

13

For all of the foregoing reasons, the Court concludes that, even viewing the allegations in the light most favorable to Plaintiff, it has not alleged plausible federal equal protection claims. Hence, those claims are subject to Rule 12(c) dismissal without prejudice.

*3. Remaining Declaratory and Injunctive Relief Requests Based on the TCA or Federal Equal Protection Claims*

Although the Court will dismiss the above TCA and federal equal protection claims, the Court notes that Plaintiff also requests a declaration that Chapter 27 is "invalid, and contrary to the Constitution, [the TCA], and laws of the United States." (Doc. 1) at 13, ¶ 65(a). Plaintiff further requests injunctive relief such as enjoining the City from enforcing Chapter 27 or its violating sections, ordering the City to pay daily fines for violating the TCA, and ordering "the City to institute policies, practices, and procedures" as well as training on PROW applications under the TCA. *Id.* at 14, ¶¶ 65(b), (h), and (i). Without an underlying TCA or federal equal protection claim, those requests for declaratory and injunctive relief necessarily fail as well. *See, e.g., Reyes v. N. Texas Tollway Auth., (NTTA)*, 861 F.3d 558, 565 n. 9 (5th Cir. 2017) (holding that declaratory and injunctive relief "claims are not freestanding; they must be supported by some underlying cause of action."). The Court will, thus, dismiss those requests without prejudice under Rule 12(c).

*4. Plaintiff's Request to Amend the Complaint*

In light of the above rulings, Plaintiff seeks an opportunity to amend the Complaint. Although Fed. R. Civ. P. 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires," this rule is not without limitations. *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014). Federal Rule Civil Procedure 7(b)(1) "requires a request for relief to be made by a motion that (1) is in writing, (2) 'states with particularity the grounds for seeking the order,' and (3) specifies the relief sought." *Id.* (quoting

Rule 7(b)(1)). The Tenth Circuit recognizes the importance of Rule 7(b)(1) and has "held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Id.*

> For example, a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based.

*Id.*

Here, Plaintiff submits only "a bare request to amend in response to a motion to dismiss…." *See, id.* Moreover, Plaintiff does not submit a proposed amended Complaint as required by D.N.M. LR-Cv 15.1 ("A proposed amendment to a pleading must accompany the motion to amend."). Without any argument or allegations upon which to determine whether to grant a request to amend, the Court denies that request.

### 5. *The State Claims*

Having determined to dismiss Plaintiff's federal claims, Plaintiff is left with only state claims. Under 28 U.S.C. § 1367(c)(3), a district court has the discretion to decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of [supplemental] jurisdiction. . . ." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the interests of judicial economy, convenience, fairness, and comity would not be served by retaining supplemental jurisdiction over the state claims. *Id.* Taking into consideration those factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental

15

jurisdiction over Plaintiff's state claims. Consequently, the Court will dismiss those claims without prejudice. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.").

IT IS ORDERED that

1. Defendant City of Santa Fe's Motion to Dismiss for Failure to State a Claim (Doc. 14) is granted;

2. Plaintiff's TCA claims for money damages will be dismissed with prejudice;

3. Plaintiff's TCA claim for a declaration of preemption will be dismissed without prejudice;

4. Plaintiff's federal equal protection claims will be dismissed without prejudice;

5. Plaintiff's requests for other declaratory and injunctive relief based on the TCA and federal equal protection claims will be dismissed without prejudice;

6. Plaintiff's state law claims will be dismissed without prejudice; and

7. Plaintiff's request to amend the Complaint is denied.

_____
UNITED STATES DISTRICT JUDGE