IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CNSP, INC., doing business as NMSURF,

    Plaintiff,

v.                                                                        Civ. No. 17-0355 KG/SCY

ALAN M. WEBBER, RENEE VILLAREAL,
SIGNE I. LINDELL, PETER IVES,
CAROL ROMERO-WIRTH, CHRIS RIVERA,
ROMAN ABEYTA, MICHAEL HARRIS,
JOANNE VIGIL COPPLER,
in their official capacities as mayor and city council
members of the City of Santa Fe, respectively,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants' (collectively, City of Santa Fe) Motion to Dismiss Plaintiff's First Amended Complaint, filed May 23, 2019. (Doc. 75). Plaintiff responded on June 6, 2019, and Defendants replied on June 18, 2019. (Docs. 76 and 77). Having considered the Motion to Dismiss, the accompanying briefing, the record of the case, and relevant law, the Court denies the Motion to Dismiss as described below.

I.    *Background*

The Telecommunications Act of 1996 ("TCA") was enacted by Congress "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub. L. No. 104-104, 110 Stat. 56, 56 (1996), codified at 47 U.S.C. § 253. The statute, therefore, preempts state and local laws that "have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications

service." 47 U.S.C. § 253(a). However, local governments may "require fair and reasonable compensation from telecommunications providers, on a competitively and neutral nondiscriminatory basis, for use of public rights-of-way … if the compensation required is publicly disclosed by such government." 47 U.S.C. § 253(c). In addition, the statute provides the Federal Communications Commission ("FCC") shall preempt enforcement of any state or local law that violates § 253(a). 47 U.S.C. § 253(d).

Under Chapter 27 of the City of Santa Fe's ordinances, entities must apply for and obtain a franchise agreement to access a public right of way ("PROW") to construct telecommunications infrastructure. City of Santa Fe Ord. (2016-42, §7); § 27-2.4(A) (as amended Nov. 9, 2016). If the application is approved, the City negotiates terms of the franchise and the City council adopts the agreement by ordinance. *Id.* § 27-2.4 (2016). An entity that obtains a franchise must pay the City of Santa Fe a 2% infrastructure maintenance fee for all gross charges sought for "telecommunications originating or received in the city." *Id.* § 27-2.5 (as amended Nov. 9, 2016).

    A. *Plaintiff's Original Complaint*

In its original Complaint filed March 20, 2017, Plaintiff, an internet service provider, brought three causes of action against the City of Santa Fe. (Doc. 1). Under the first cause of action, Plaintiff alleged that certain provisions of Chapter 27 of the City of Santa Fe's municipal code had the effect of prohibiting it from providing telecommunications services in violation of § 253 of the TCA. *Id.* at ¶¶ 31-43. Additionally, Plaintiff alleged that the City of Santa Fe's failure to act on Plaintiff's franchise application also prohibited it from providing telecommunications services in violation of § 253. *Id.* Plaintiff's second cause of action alleged the City of Santa Fe discriminated against it in violation of the equal protection clauses of the

Fifth Amendment of the United States Constitution and Section 18 of the New Mexico Constitution. *Id.* at ¶¶ 46-55. Under the third cause of action, Plaintiff alleged the City of Santa Fe violated the Anti-donation Clause of Article IX Section 14 of the New Mexico Constitution by using tax revenue bond funds to pay for an infrastructure project with a different service provider and donating material for that project. *Id.* at ¶¶ 56-64.

### B. *Defendants' Motion to Dismiss Plaintiff's Complaint*

On April 11, 2017, Defendants filed a Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 14). The Court granted the Motion to Dismiss on all counts. (Doc. 54). The Court dismissed Plaintiff's § 253(a) claim for damages with prejudice, holding such a claim cannot be brought under § 1983 or an implied private cause of action. *Id.* at 9.[1] Regarding Plaintiff's preemption claim seeking injunctive relief, the Court dismissed the claim without prejudice, holding the FCC has the authority for such claims pursuant to § 253(d). *Id.* at 10. The Court also dismissed Plaintiff's constitutional equal protection claims without prejudice and declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.* at 14-16.

### C. *Plaintiff's Appeal to the Tenth Circuit Court of Appeals*

On March 20, 2018, Plaintiff filed a Notice of Appeal to the United States Court of Appeals for the Tenth Circuit. (Doc. 56). Plaintiff sought review of the dismissal of its claims for damages under §§ 253(a) and (c), brought as a § 1983 private right of action, and of its

---

[1] The Court also held that, to the extent Plaintiff brought a cause of action under § 253(c), § 253(c) was a safe harbor provision and did not create a cause of action. Thus, the Court dismissed with prejudice any purported claim under § 253(c). *Id.* at 10.

preemption claims that certain provisions of the City of Santa Fe's municipal code violated § 253, brought as an implied right of action under the Supremacy Clause.[2]  App. br. at 10.

    *D. Order of the Tenth Circuit Court of Appeals*

The Tenth Circuit issued its Order and Judgement on January 14, 2019, which was filed with this Court on March 7, 2019.  (Doc. 61).

    *1. Private Right of Action for Damages*

The Tenth Circuit affirmed the district court's holding that *Qwest* precluded Plaintiff from bringing a private right of action for damages under 42 U.S.C. § 1983.  (Doc. 61) at 11 (citing *Qwest Corp v. City of Santa Fe*, 380 F.3d 1265, 1265-67 (10th Cir. 2004)) (finding no implied private right of action in § 253).

    *2. Preemption Claim for Equitable Relief*

On appeal, Plaintiff contested the district court's conclusion that only the FCC has the authority to declare preemption under § 253(d), and relied on the Tenth Circuit's holding in *Qwest* that "[a] party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action."  (Doc. 61) at 7 (quoting *Qwest*, 380 F.3d at 1266).  In considering this argument, the Tenth Circuit explained that after *Qwest* was decided, the United States Supreme Court issued a decision "clarif[ying] that no implied right of action is contained in the Supremacy Clause." *Id.* (quoting *Armstrong v. Exceptional Child Care Center, Inc.*, 575 U.S. 320, 326 (2015)).  The Tenth Circuit stated that *Armstrong* reaffirmed that "federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law," however, "the power

---

[2] Plaintiff also asked the Tenth Circuit Court of Appeals to determine whether, if Plaintiff's claims are valid, the district court correctly declined to exercise supplemental jurisdiction over its state claims. App. br. at 11.

4

of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."[3] *Armstrong*, 575 U.S. at 326, 328. In addition, the Tenth Circuit noted that in *Safe Streets Alliance v. Hickenlooper*, it held in a divided opinion that to maintain an equitable cause of action to enforce a federal statute's preemptive effects, a plaintiff must allege the statute confers on the plaintiff "a federal substantive right of her or his own to vindicate." 859 F.3d 864, 902-03 (10th Cir. 2017).

Based on the holdings in *Armstrong* and *Safe Streets Alliance*, the Tenth Circuit suggested that authority for preemption adjudication may not be limited to the FCC under § 253(d). *See* (Doc. 61) at 7-8. Accordingly, the Court reversed the district court's holding that Plaintiff failed to state a claim on grounds that preemption was limited to the authority of the FCC and remanded the case to allow Plaintiff to amend its complaint to allow the district court to analyze whether Plaintiff can state an equitable preemption claim in light of *Armstrong* and *Safe Streets Alliance*. *Id.* at 9. Additionally, the Court instructed the district court to address whether Plaintiff's claims are moot since the City of Santa Fe awarded Plaintiff a franchise while the appeal was pending. *Id.* at 10.

   E. *Plaintiff's First Amended Complaint*

In its First Amended Complaint filed on May 9, 2019, Plaintiff pleads two causes of action. *See* (Doc. 71). First, Plaintiff alleges that Chapter 27-2 of the City of Santa Fe's Telecommunication Facilities in the Public Rights-of-Way Ordinance, as amended in 2017 (the "2017 Ordinance") violates § 253 of the TCA for the following reasons: (i) the 2% fee does not distinguish between charges for service addresses relating to PROW and addresses not relating to

---

[3] The Tenth Circuit noted that Plaintiff's complaint did not name any state officers or City officials as defendants. (Doc. 61) at 7, n.4.

PROW; (ii) the 2% gross charge fee and the $2,500 land use application fee "exceed the level of costs permitted by FCC Order 18-133;" (iii) the "amount of the charges imposed by the 2017 Ordinance is prohibitive for telecommunications providers, or retailers, on whom the charges are imposed;" (iv) "the 2% fee is not imposed in a fair and balanced manner, or nondiscriminatory manner, because certain companies are exempted from paying the 2% fee;" and (v) "provisions 5, 8, 17, and 19 in the 2017 Ordinance on their own, or in combination, violate 47 U.S.C. § 253(a)."  (Doc. 71) at ¶¶ 24-28.

Second, Plaintiff alleges the City of Santa Fe has engaged in preferential treatment of Cybermesa, a telecommunications company, in violation of § 253 of the TCA.  In support of this claim, Plaintiff alleges the City of Santa Fe allows Cybermesa "to use a fiber line owned by the City for free, and to charge other telecommunications providers a fee for the same use, and retain the charges … ." *Id.* at ¶ 31.  Plaintiff alleges that such "preferential treatment of Cybermesa materially inhibits or limits the ability of Plaintiff to compete in a fair and balanced and non-discriminatory legal and regulatory environment, and impedes Plaintiff in the provision of telecommunications services, causing injury to Plaintiff." *Id.* at ¶ 32.

Plaintiff seeks a declaration that the referenced provisions of the 2017 Ordinance and the City of Santa Fe's preferential treatment of Cybermesa violate federal law and are thus preempted.  *Id.* at 9, ¶ 1.  Plaintiff also seeks preliminary and permanent injunctive relief to enjoin enforcement of the referenced provisions 2017 Ordinance and to enjoin the preferential treatment of Cybermesa.  *Id.* at ¶ 2.  Finally, Plaintiff asks the Court to enjoin the Defendants from enforcing "any provision of franchise ordinance No. 2018-13 with Plaintiff that is inconsistent with or preempted by federal law." *Id.* at ¶ 3.

II. Discussion

    *A. Mootness*

A claim must be capable of resolution through the judicial process. *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016) (citing *Hollingsworth v. Perry* 570 U.S. 693 (2013)). The plaintiff's personal interest "that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Baca v. Colorado Department of State*, 935 F.3d 887, 922 (10th Cir. 2019), *cert. granted*, 140 S.Ct. 918 (2020) (quoting *Arizonians for Official English v. Arizona*, 520 U.S. 43, 68 (1997)). Thus, a case becomes moot when "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit[] at any point during litigation." *Id.* (quoting *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 669 (2016)).

In its original Complaint, Plaintiff sought both prospective relief (declaration and injunction) and retrospective relief (damages and retrospective declaration). *See* (Doc. 1). Plaintiff alleged, *inter alia*, that the City of Santa Fe's failure to act on its franchise application amounted to a prohibition to provide telecommunications services in violation of § 253 of the TCA and discrimination in violation of the equal protection clauses of the United States Constitution and New Mexico Constitution. *Id.* at ¶¶ 44, 48. Plaintiff sought relief in the form of "compensatory damages and all other appropriate monetary and equitable relief, including the value of lost revenue . . . to make Plaintiff whole for the loss suffered as a result of the discriminatory conduct alleged in this complaint." *Id.* at ¶ 65(d).

As to the City of Santa Fe's failure to act on Plaintiff's franchise application, there is no question that an "intervening circumstance" occurred when the City of Santa Fe granted Plaintiff a franchise. Had Plaintiff's Complaint concerned allegations primarily related to the City's

granting of a franchise, it would be questionable whether Plaintiff would continue to have a personal stake in the outcome of this lawsuit at this point. *Campbell-Ewald Co.*, 136 S.Ct. at 669. However, this is not the extent of Plaintiff's claims. Instead, at the outset of this litigation Plaintiff alleged that a number of provisions within Chapter 27 of the City of Santa Fe's municipal code function as barriers to entry in violation of § 253, for which it seeks prospective relief. For example, Plaintiff points to the "2% fee for all services terminated to an address in the City regardless if the wireline cable originates from a PROW or a private land utility easement;" the "provision [that] gives the City Council the right to deny PROW access;" the "provisions [that] would charge Plaintiff a 2% gross charge fee for telecommunications services for all customers that reside in Santa Fe;" the "City of Santa Fe [not charging] the 2% gross charge fee to other telecommunications providers that are competitors in the marketplace to NMSURF;" and the provision that "requires providers to keep records of all its books open for audit and inspection to the City of Santa Fe and is not limited only to the extent necessary to manage the PROW." (Doc. 1) at ¶¶ 32-36.

Plaintiff maintains these allegations almost verbatim in its First Amended Complaint. *See* (Doc. 71). Moreover, Plaintiff's interest in the outcome of the litigation is perhaps even more heightened now that it has been awarded a franchise because it must now comply with the very provisions of Chapter 27 of the City of Santa Fe municipal code it claims are in violation of § 253. Accordingly, Plaintiff is now directly impacted by the City of Santa Fe's actions that Plaintiff claims amount to an effective prohibition of entry under § 253 of the TCA.

For the foregoing reasons, the Court concludes the claims raised in Plaintiff's First Amended Complaint demonstrate that Plaintiff continues to have a personal stake in the outcome

of this litigation and are not moot. Because this issue was not raised in the briefings, the Court assumes the parties to this action agree.

    B. *Defendants' Motion to Dismiss for Failure to State a Claim*

        1. *Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]e assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Bixler*, 596 F.3d at 756 (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009)). The Court may dismiss a complaint under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramirez v. Dept. of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The Rule 12(b)(6) standard does not require a plaintiff to set forth a pima facie case for each element. *Safe Streets Alliance*, 859 F.3d at 878 (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192-93 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.* (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). However, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer special factual allegations to support each claim.'" *Id.* A "claim is facially plausible if the plaintiff has pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *George v. Urban Settlement Svcs.*, 833 F.3d 1242, 1247 (10th Cir. 2016)).

9

### 2. *Plaintiff's Equitable Preemption Claims*

Plaintiff states that it has amended its claims to now seek only prospective relief against state officials under the Court's equitable powers pursuant to *Ex parte Young*. (Doc. 76) at 2-3. Absent waiver or Congressional abrogation, the Eleventh Amendment protects a state from private suit in federal court. U.S. Const. am. XI. In *Ex parte Young*, however, the United States Supreme Court recognized an equitable exception to Eleventh Amendment immunity for suits seeking prospective injunctive relief against a state official where there is an ongoing violation of federal law. 209 U.S. 123, 159-60 (1908). To determine whether a party has sufficiently pled a claim under *Ex parte Young* to avoid Eleventh Amendment immunity, courts need only conduct "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

In their Motion to Dismiss, Defendants argue that pursuant to *Armstrong* and *Safe Streets* Plaintiff must demonstrate that Congress "create[d] a private right of action to invoke an Article III court's equitable power." (Doc. 75) at 4. Defendants state that because the Tenth Circuit in *Qwest* held that § 253 of the TCA does not create a private cause of action, and because Congress placed preemption enforcement of the TCA with the FCC, "Plaintiff's well-pled facts, even if true, fail to meet the standard for an equitable preemption claim, given the constraints of § 253, and consequently fail to state claims for which the Court can grant relief." *Id.* at 6. Defendants also argue that "to the extent that Plaintiff is complaining of unequal treatment, implicitly raising an equal protection claim, that claim is barred by the law of the case" because Plaintiff did not appeal the dismissal of its equal protection claim. *Id.* at 6-7.

10

Plaintiff disputes that *Armstrong* and *Safe Streets* mandate dismissal of its claims and denies that it alleges a constitutional equal protection claim. (Doc. 76) at 2-11.

### a. *Armstrong* Does Not Foreclose Plaintiff's Preemption Claims

In *Armstrong*, providers of habilitation services to persons covered by Idaho's Medicaid plan sued state officials claiming the state was violating the federal Medicaid Act by reimbursing providers at rates lower than the Medicaid Act permits. 575 U.S. at 323-24. The United States Supreme Court reversed the district court and Ninth Circuit's holdings that the providers had a private right of action under the Supremacy Clause to seek injunctive relief. *Id.* at 326.[4] The Supreme Court explained that the Supremacy Clause "is not the source of any federal rights," and does not create a cause of action. *Id.* at 324 ("If the Supremacy Clause includes a private right of action, then the Constitution *requires* Congress to permit the enforcement of its laws by private actors, significantly curtailing its ability to guide the implementation of federal law.").

Nevertheless, the *Armstrong* Court emphasized that "[t]o say that the Supremacy Clause does not confer a right of action is not to diminish the significant role that courts play in assuring the supremacy of federal law." *Id.* at 326. Indeed, the Court explained, "as we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.* (citing *Ex Parte Young*, 209 U.S. at 155-56). The Court further explained that "[t]he ability to sue to enjoin

---

[4] The Supremacy Clause, Art. VI, cl. 2, reads:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

11

unconstitutional actions by state and federal officers is the creation of courts of equity," and the Court then proceeded to consider whether the providers' suit could proceed against the state in equity. *Id.* at 327. The Court concluded the claims could not proceed in equity because "the Medicaid Act implicitly precludes private enforcement." *Id.* at 328. The Court reasoned that Congress intended to foreclose equitable relief because (1) the sole remedy provided for a state's failure to comply with the Medicaid Act is the withholding of Medicaid funds by the Secretary of Health and Human Services, and (2) because the Medicaid Act's mandate that state plans provide for payments that are "consistent with efficiency, economy, and quality of care," is so broad that it is "judicially unadministrable." *Id.* (quoting 42 U.S.C. § 1396a(a)(30(A)).

The *Armstrong* holding does not preclude Plaintiff's equitable preemption claims here for several reasons. First, *Armstrong* did not foreclose parties from bringing equitable preemption suits under *Ex parte Young*, as Plaintiff does here. While *Armstrong* clarified there is no implied right of action contained in the Supremacy Clause, the Supreme Court nevertheless allowed that parties may continue to pursue equitable preemption claims via *Ex parte Young* as long as the statute at issue has not foreclosed equitable relief. *Id.* at 326.

In addition, unlike the Medicaid Act in *Armstrong*, the TCA does not contain a sole remedy. Instead, the TCA's enforcement provision, 47 U.S.C. § 401, contemplates numerous remedies. *See, e.g.*, 47 U.S.C. § 401(a) (allowing Attorney General of the United States to pursue writs of mandamus commanding compliance with TCA); § 401(b) (providing for injunctive relief for failure to obey an FCC order). Additionally, § 414 of the TCA states: "Nothing in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." *See also*

*Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 360 (1986) ("The [TCA] establishes, among other things, a system of dual state and federal regulation over telephone service.").

While § 247(d) provides that the FCC shall preempt state or local laws that violate § 247(a), that does not equate to congressional intent to bar other parties from invoking federal jurisdiction to bring preemption claims. *See Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 146 (2nd Cir. 2016)  (holding *Armstrong* did not mandate dismissal of preemption claims even though challenged statute conferred enforcement authority on the Federal Aviation Administration, because plaintiffs did not seek "to enforce the federal law themselves, but to preclude a municipal entity from subjecting them to local laws enacted in violation of federal requirements").  It is significant that Plaintiff here seeks to use *Ex parte Young* as a shield in that it seeks injunctive relief, in contrast to the plaintiffs in *Armstrong* who sought affirmative relief in the form of additional payments.  *See Michigan Corr. Org. v. Michigan Dept. of Corr.*, 774 F.3d 895, 906 (6th Cir. 2014) (explaining parties "may use *Ex parte Young* as a shield against the enforcement of contrary (and thus preempted) state laws, … [b]ut matters differ when litigants wield *Ex parte Young* as a cause-of-action-creating sword" because the relief sought "in reality is retroactive and monetary in nature"); *see also Private Rights of Action-Equitable Remedies to Enforce the Medicaid Act-Armstrong v. Exceptional Child Center, Inc.*, 129 Harv. L. Rev. 211, 216 (2015) ("[T]he [*Armstrong*] majority, by not calling the Court's previous reading of *Ex parte Young* into question, suggests that the displacement of negative injunctions demands a more robust showing of congressional intent.").

Also, unlike the Medicaid claim at issue in *Armstrong*, Plaintiff's TCA-based challenge to the City of Santa Fe's ordinance would not require application of a judicially unadministrable standard.  In *Armstrong*, the plaintiffs sought enforcement of a statute that broadly mandated

13

payments that are "consistent with efficiency, economy, and quality of [medical] care." 575 U.S. at 327. The Tenth Circuit concluded this statute was judicially unadministrable because agency expertise and judgment was necessary to provide "uniformity, widespread consultation, and resulting administrative guidance" while avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action." *Id.* at 328-329. The TCA, however, sets forth a simple rule: that state and local laws are preempted if they "have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 247(a). Not only is the TCA not as "judgment-laden," "broad," or "unspecific" as the Medicaid Act, but several courts have already considered similar preemption claims by telecommunications providers under § 253. *See, e.g., Qwest*, 380 F.3d 1258 (considering plaintiff's equitable preemption claims under § 253); *Virgin Mobile USA, LP v. Pat Apple, et al.*, 2018 WL 2926576 (D. Kan.) (same); *City of Austin v. Abbott*, 385 F.Supp.3d 537 (W.D. Tex. 2019) (same).

  Finally, the United States Supreme Court has held that the TCA does not "display any intent to foreclose jurisdiction under *Ex parte Young*." *Verizon*, 535 U.S. at 638. The Supreme Court in *Armstrong* did not disturb its holding in *Verizon* and, instead, relied on *Verizon's* "intent to foreclose" standard in considering whether Congress intended to foreclose equitable relief in the Medicaid statute. Moreover, other courts have found that equitable preemption claims may proceed after *Armstrong*. For example, in *Virgin Mobile*, the plaintiff alleged that a state regulation was preempted by §§ 253 and 254 of the TCA. 2018 WL 2926576, *2. The court rejected defendants' argument that plaintiff's claims were no longer viable after *Armstrong*, reasoning the TCA does not contain a sole remedy like the Medicaid Act and Congress did not confer enforcement of the TCA on the FCC alone. *Id.* at *4-5. Relying on *Verizon's* application

of *Ex Parte Young* to the TCA, the court held that because plaintiff alleged an ongoing violation of federal law and sought prospective relief, the complaint "presents a traditional *Ex parte Young* action" and concluded "it has equitable jurisdiction to hear Virgin Mobile's claims." *Id.* at 6.

Similarly, in *City of Austin*, the court considered the defendant's argument that *Armstrong* barred a preemption claim under § 253 of the TCA. 385 F.Supp.3d at 541-42. The court rejected defendant's argument, explaining *Armstrong* did not modify clear precedent "that a plaintiff seeking injunctive relief from a state regulation on the grounds that the regulation is pre-empted by federal statute presents a federal question which the federal courts have jurisdiction to resolve." *Id.* at 542 (citing *Shaw v. Delta Airlines*, 463 U.S. 85, 96 (1983) and *Ex parte Young*, 209 U.S. 123). The court further explained that *Verizon* provides the basis for the court's jurisdiction because the Supreme Court "held that even though the [TCA] did not create a private right of action to challenge the state agency's order, the district court still had jurisdiction" pursuant to *Ex parte Young*. *Id.* at 542; *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) (explaining "the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause"); *Air Evac EMS, Inc. v. Texas Dept. of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (rejecting assertion that *Armstrong* modified prior Supreme Court cases authorizing preemption claims, stating *Armstrong* instead "reaffirmed that plaintiffs seeking injunctive relief against state officers must satisfy *Ex parte Young's* equitable exception"); *Friends of the East Hampton Airport*, 841 F.3d at 144 (finding *Armstrong* does not bar equity jurisdiction pursuant to *Ex parte Young*, and recognizing *Verizon* authorizes suits by telecommunications carriers asserting federal preemption claims); *CareFirst, Inc. v. Taylor*, 235 F.Supp.3d 724, 742 (D. Md. 2017) (distinguishing *Verizon* and TCA from *Armstrong* and Medicaid Act and stating TCA preemption claim "is a classic application of *Ex parte Young*");

15

*Bellsouth Telecommunications, LLC v. Louisville/Jefferson Cnty. Metro Gov't*, 2016 WL 4030975, *5-6 (W.D. Ky.) (finding *Armstrong* does not foreclose claim state law is preempted by federal statute and comparing statute at issue to TCA).

For the foregoing reasons, the Court concludes *Armstrong* does not mandate dismissal of Plaintiff's equitable preemption claims.

> b. *Safe Streets Does Not Foreclose Plaintiff's Preemption Claims*

Next, Defendants argue the Tenth Circuit's decision in *Safe Streets* supports dismissal of Plaintiff's claims. In *Safe Streets*, the plaintiffs alleged, *inter alia*, that an amendment to the state's constitution repealing criminal and civil proscriptions on recreational marijuana, along with state and local laws enforcing that amendment, are preempted by the federal Controlled Substances Act ("CSA"). 859 F.3d at 892. The plaintiffs asserted jurisdiction for their preemption claims pursuant to the Supremacy Clause and the CSA's preemption provision. *Id.*

The Tenth Circuit held "the Supremacy Clause is not the source of any federal rights … and certainly does not create a cause of action." *Id.* at 900 (citing *Armstrong*, 575 U.S. at 324-25). Therefore, the Tenth Circuit considered whether the plaintiffs could pursue their claims in equity, stating to do so the plaintiffs must demonstrate they have a federal substantive right to the relief sought. *Id.* at 901-02 ("[T]o invoke the Article III courts' equitable powers, a plaintiff asserting a cause of action to enforce a federal statute must have a federal right that he or she possesses against the defendant. … Therefore, unless a private plaintiff has been given a federal right of her or his own to vindicate in the CSA, the plaintiff cannot maintain a cause of action—in law or in equity—against any defendant for violating the CSA.") (citations omitted). The Court further explained "[f]or a statute to create such private rights, its text must be phrased in terms of the persons benefited," while "statutes that focus on the person regulated rather than the

16

individuals protected create no implication of an intent to confer rights on a particular class of persons." *Id.* at 903 (citations omitted).

Turning to the CSA, the Tenth Circuit reasoned the plaintiffs did not allege any substantive rights in the CSA by which they can enforce the CSA's preemptive effects, and federal courts "will not entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws." *Id.* at 904 (citations omitted). In contrast, Plaintiff here specifically alleges a substantive right in the TCA in that it seeks to restrain City of Santa Fe officials from enforcing the 2017 Ordinance in violation of § 253. Not only has the Supreme Court recognized the right for telecommunication services providers to pursue preemption claims under the TCA, but the Tenth Circuit in *Safe Streets* distinguished the CSA from the TCA and other federal statutes that provide substantive rights. *Id.* at 905, n.17 (stating the TCA and other federal statutes are different from the CSA in that they "leave no doubt that the federal statutes … in question were the purported sources of the private plaintiffs' substantive rights under consideration) (citing *Verizon*, 535 U.S. at 640-46). Moreover, in *Safe Streets* the Court emphasized the plaintiffs could not maintain their preemption claims because they did not seek to enjoin the state from enforcing the state marijuana laws "*against them*." *Id.* at 906 (emphasis in original). The Tenth Circuit contrasted the plaintiffs' claims with claims brought pursuant to *Ex parte Young*, explaining "if an individual claims federal law immunizes him from state *regulation*, the court may issue an injunction upon finding the state *regulatory actions* preempted." *Id.* at 906, n.19 (quoting *Armstrong*, 575 U.S. at 324, and *Ex parte Young*, 209 U.S. at 155-56). Here, Plaintiff brings the exact claims *Safe Streets* exempted from its holding—that § 253 immunizes it from the City of Santa Fe enforcing the 2017 Ordinance against them.

In their Motion to Dismiss, Defendants argue *Safe Streets* requires Plaintiffs to demonstrate that the TCA provides a "private right of action" to invoke this Court's equitable power and Plaintiff lacks a private right of action under the TCA. (Doc. 75) at 4-5 (citing *Qwest*, 380 F.3d at 1265). Defendants' argument conflates a "private right of action" to pursue a constitutional claim with a statutory "substantive right" to pursue equitable relief under *Ex parte Young*. Indeed, the Tenth Circuit in *Safe Streets* explained that "[t]he question of who may enforce a statutory right is fundamentally different from the question of who may enforce a right that is protected by the Constitution." *Safe Streets Alliance*, 859 F.3d at 902, n.14; *see also Qwest*, 380 F.3d at 1266 (stating a private right of action "is not required where a party seeks to enjoin the enforcement of a regulation on the ground that the local ordinance is preempted by federal law"). Moreover, while the Tenth Circuit in *Qwest* dismissed the § 1983 action because the plaintiff could not assert a constitutional private right of action under § 253, the Tenth Circuit nevertheless proceeded to consider the equitable preemption claims under § 253. *See Qwest*, 380 F.3d at 1266-73. Therefore, Defendant's argument that there is no private right of action to enforce the TCA is misplaced. Instead, the Court must determine whether the TCA provides Plaintiff a substantive right of enforcement, and, pursuant to *Verizon*, the Court concludes that it does.

### c. Ex Parte Young

Having found that neither *Armstrong* nor *Safe Streets* bar Plaintiff's preemption claims, the Court must next determine whether Plaintiff has sufficiently stated *Ex parte Young* claims. *Ex parte Young* allows a party to obtain prospective equitable relief against a state official, applies only to alleged ongoing violations of federal law, and does not permit suits seeking retroactive, compensatory, or monetary relief. *Ex parte Young*, 209 U.S. at 159-60; *see also*

*Verizon*, 535 U.S. at 645-46 ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective … [and] does not include an analysis of the merits of the claim.").

Applying the straightforward inquiry here, Plaintiff alleges an ongoing violation of federal law and seeks prospective relief in the form of an injunction. Specifically, Plaintiff has now named the mayor and city council members for the City of Santa Fe in its First Amended Complaint and alleges that multiple provisions of the City of Santa Fe's 2017 Ordinance violate § 253. (Doc. 71) at 1. Plaintiff also alleges the City of Santa Fe has "continued favored treatment" of another telecommunications provider in violation of § 253. *Id.* Plaintiff seeks prospective relief in the form of a declaratory judgment that the provisions of the 2017 Ordinance and preferential treatment of Cybermesa violates federal law. *Id.* at 9 (asking the Court to enjoin Defendants from enforcing certain provisions of the 2017 Ordinance and franchise ordinance No. 2018-13, and to enjoin the preferential treatment of Cybermesa). Therefore, the Complaint presents an *Ex parte Young* action and the Court concludes it has equitable jurisdiction to hear Plaintiff's claims. *See also Verizon*, 535 U.S. at 645 (holding court has jurisdiction under *Ex parte Young* to hear telecommunications service provider's claim against state officials that ordinance was preempted by TCA); *Virgin Mobile USA, LP*, 2018 WL 2926576, *2 (same); *City of Austin*, 385 F.Supp.3d at 544-45 (same); *Bellsouth Telecomm. LLC*, 2016 WL 4030975 (same).

III. *Conclusion*

Based on the foregoing the Court concludes the claims raised in Plaintiff's First Amended Complaint are not moot and are not barred by either *Armstrong* or *Safe Streets*. In

19

addition, the Court has jurisdiction to hear Plaintiff's equitable preemption claims under *Ex parte Young*. Accordingly, the Court denies Defendants' Motion to Dismiss.[5]

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim, (Doc. 75), is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Defendants briefly state in their Motion to Dismiss that Plaintiff also fails to state a claim because § 253(c) allows state and local governments to require reasonable compensation for the use and occupancy of PROW. (Doc. 75) at 2. However, neither party addressed this argument and the Court will not consider issues not adequately briefed. *See Mitchell v. City of Moore,* 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court [i]s not obligated to comb the record in order to make [a party's] arguments for him."); *Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (holding litigant must support argument with legal authority); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir.1995) (declining to consider issues not adequately briefed).